IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| CLARENCE J. FLOWERS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:16-cv-00135-O-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| **Acting Commissioner of the Social** § | |
| **Security Administration,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Clarence J. Flowers ("Flowers") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for disability insurance benefits ("DIB") for a period of disability under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned RECOMMENDS that United States District Judge Reed O'Connor AFFIRM the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.     STATEMENT OF THE CASE**

Flowers filed for DIB for a period of disability on August 27, 2012, alleging that his disability began on August 24, 2011. (Transcript ("Tr.") 13). The Commissioner initially denied his claim on November 15, 2012 and denied it again on reconsideration on March 1, 2013. (Tr. 13). Flowers requested a hearing, which was held before Administrative Law Judge ("ALJ") Edward L. Thompson on April 10, 2015 via video, with Flowers and his attorney in Wichita Falls,

Texas and the ALJ in Oklahoma City, Oklahoma. (Tr. 13). The ALJ issued his decision on June 8, 2015, finding that Flowers was not disabled. (Tr. 10, 13).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Flowers engaged in substantial gainful activity from January 13, 2014 until April 11, 2014 and from February 2, 2015 through the date of the decision, June 8, 2015. (Tr. 15). The ALJ also established during step one that Flowers did not engage in substantial gainful activity from August 24, 2011 until returning to work on January 13, 2014, and the remainder of the ALJ's findings addressed this time period. (Tr. 16). At step two, the ALJ determined that Flowers' combined physical impairments constituted a severe impairment, comprised of a left foot fracture with Lisfrank injury, a pelvic ring fracture, a right calcaneal fracture, a sacral sprain, disorder of coccyx, and L5-S1 foraminal stenosis. (Tr. 16). At step three, the ALJ found that Flowers' impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. Pt. 404(p). At step four, the ALJ ruled that Flowers had the residual functioning capacity ("RFC") to occasionally lift or carry 20 pounds, stand or walk with normal breaks for two hours in an eight hour day, sit for six hours, balance, stoop, kneel, crouch, and climb stairs, but could not climb a ladder, rope, or scaffold. (Tr. 16). Pursuant to 20 C.F.R. § 404.1565, the ALJ proceeded to step five without making a finding concerning Flowers' past relevant work. (Tr. 20). At step five, the ALJ found that considering Flowers' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Flowers could perform. (Tr. 20-21).

The Appeals Council denied review on September 13, 2016. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to Flowers' pleadings, testimony at the administrative hearing, and the administrative record, Flowers was 32 years old on the alleged disability onset date, and 35 years old at the time of the administrative hearing. (Tr. 20, 48). He has a 10th grade education and received training for repairing heating and air conditioning units. (Tr. 49). His employment history included work as an air conditioning technician and work as a drafter. (Tr. 49-50). Flowers asserts that his physical impairments render him disabled under the SSA. ECF No. 1.

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt.

P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

Flowers raises three issues on appeal. He claims that the ALJ (1) committed legal error in finding that Flowers' unsuccessful work attempt was substantial gainful activity, (2) applied an improper legal standard to evaluate Flowers' severe impairments, and (3) failed to properly evaluate credibility.

### A.     Flowers Engaged in Substantial Gainful Activity While Alleging Disability.

Flowers first contends that the ALJ committed legal error when he determined that Flowers had engaged in substantial gainful activity between January 13, 2014 and April 11, 2014. ECF No. 12 at 8. Substantial work activity involves significant physical or mental activities, and may qualify as substantial work even if performed on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than he had in his previous work. 20 C.F.R. §§ 404.1572(a), 416.972(a). Gainful activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). Work performed for three months or less will be treated as an unsuccessful work attempt if the claimant stopped working, or reduced his work and earnings below the level of earnings representing substantial gainful activity, because of his impairment. 20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3); SSR 05-02, 2005 WL 6491604, at *2 (S.S.A. February 28, 2005).

Flowers argues that the work performed at Groves Mechanical, Inc. from January 13, 2014 to April 11, 2014 was less than three months in duration and that he stopped working due to the pain he was suffering. (Plaintiff's Brief ("Pl.'s Br.") at 9). Flowers claims that this short work period was a "make work" situation given to him by his former employer due to his prior rapport as a good employee and that he would not have been hired otherwise. (*Id.*) Flowers further argues that because the ALJ found substantial gainful activity from January 13, 2014 until April 11, 2014, the ALJ never considered the electrodiagnostic testing of May 1, 2014, the sacroiliac fusion on

July 18, 2014, or the MRI of Flowers' left ankle on October 1, 2014 to determine Flowers' RFC. (Plaintiff's Reply at 3). Flowers contends that had the ALJ considered this evidence the ALJ may have reached a different conclusion in regards to Flowers' RFC. The Commissioner argues that Flowers worked from February 2, 2015 though the date of the ALJ's decision on June 8, 2015 as a drafter, which moots the issue of whether Flowers had a previous successful work attempt for the ALJ to consider. (Defendant's Brief ("Df.'s Br.") at 6-7).

The ALJ ultimately found that Flowers engaged in substantial gainful activity from January 13, 2014 until April 11, 2014 by applying the standards provided by 20 C.F.R. §§ 404.1520(b) and § 404.1571. Even if work performed is not substantial gainful activity, the ALJ may consider such work to show that the claimant can do more work than actually claimed. 20 C.F.R. § 404.1571. The employment period lasted 88 days, and therefore required the ALJ to determine whether Flowers stopped working because of his impairment. Flowers testified that he quit his job at Groves Mechanical, Inc. on his own free will. (Tr. 45). He also testified that he quit because he was having to take more pain pills and because he was expecting to undergo another back surgery. (*Id.*) During his employment at Groves Mechanical, Flowers was earning $20 an hour and was working from four to eight hours a day for three to five days a week. (Tr. 44). Flowers also testified that while working at Groves Mechanical, as a supervisor, he would travel to job sites. (Tr. 44).

The undersigned finds that the record and evidence supports the ALJ's determination that work performed from January 13, 2014 until April 11, 2014 was substantial gainful activity. Though Flowers testified that he quit his employment to take more pain pills and in anticipation of another back surgery, his testimony that he quit on his own free will some time before he underwent the surgery supports the ALJ's decision. (Tr. 44-45). This is sufficient evidence to support the ALJ's finding that Flowers' leaving his work at Groves Mechanical, Inc. was not due

to his impairments. If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its judgment for the Commissioner's, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Finding that the ALJ's determination is supported by substantial evidence in the record, the undersigned finds no error in the determination that Flowers' employment from January 13, 2014 to April 11, 2014 was substantial gainful activity.

B. **The ALJ Applied the Proper Legal Standard in Evaluating Flowers' Severe Impairments.**

Flowers further alleges that the ALJ applied an improper legal standard to evaluate his severe impairments. (Pl.'s Br. at 10). Flowers argues that defining a severe impairment as one which "significantly limits an individual's ability to perform basic work activities" and a non-severe impairment as one that has "no more than a minimal effect on an individual's ability to work" is an improper legal standard inconsistent with Fifth Circuit precedent. (*Id.*) The Commissioner contends that the Fifth Circuit and several district courts have endorsed the same language used by the ALJ in the present case and that substantial evidence supports the ALJ's step two determination. (Df.'s Br. at 7-8). Though the ALJ did not use the exact language set forth by the Fifth Circuit in *Stone v. Heckler*, the undersigned finds that the language used by the ALJ is ultimately consistent with the standard adopted by the Fifth Circuit in that case. *See Stone*, 752 F.2d 1099.

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at step two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental

7

ability to do basic work activities."). The Fifth Circuit has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104-05. Instead, the Fifth Circuit established that an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added). The *Stone* severity standard does not allow for any interference with work ability, not even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.")

Here the ALJ stated the severity standard as:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85–28, 96–3p, and 96–4p).

(Tr. 14). Plaintiff cites *Scroggins v. Astrue*, and argues that the "minimal effect" standard used by the ALJ in the present case is the same language that was ultimately remanded in *Scroggins*. (Pl.'s Br. at 10-12). However, the Fifth Circuit has not addressed the exact issue raised in *Scroggins* or the case at bar. The Fifth Circuit has held that the standard applied for non-severe impairments is when the impairment "has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101). Ultimately, because the Court in *Brunson* upheld the "minimal effect" standard while also citing *Stone* in its reasoning, the language used by the ALJ in the present case is not an improper statement of the law. The district courts in *Coutee v. Colvin* and *Acosta v. Astrue* also performed

8

a full analysis on this exact issue and found that courts that remanded cases back to the Commissioner for failure to cite *Stone* or state the exact language of *Stone* construed that standard too narrowly. *Coutee v. Colvin*, No. CIV.A. H-11-4519, 2013 WL 2189867, at *3 (S.D. Tex. May 15, 2013); *Acosta v. Astrue*, 865 F. Supp. 2d 767 (W.D. Tex. 2012). Both the district courts in *Coutee* and *Acosta* found that the "minimal effect" language, also used by the ALJ in the present case, was "consistent with and conform[ed] to the slight abnormality standard adopted by the Fifth Circuit." *Coutee*, 2013 WL 2189867, at *3 (quoting *Acosta*, 865 F. Supp. 2d at 783).

The Court recognizes Plaintiff's argument that several district courts have remanded cases back to the Commissioner for using the "minimal effect language" or for failing to cite *Stone* by name. *See e.g.*, *Scroggins*, 598 F. Supp. at 800 (remanding the case after finding the ALJ did not explicitly reference *Stone* or a similar opinion applying the Fifth Circuit's standard); *Padalecki v. Astrue*, 688 F. Supp. 2d 576 (W.D. Tex. 2010) (remanding the case after finding that the ALJ's standard, which allowed for a finding of non-serverity if the abnormality has only a minimal effect on the individuals ability to work, inconsistent with the *Stone* standard). However, the Fifth Circuit's decision in *Brunson* and those of the district courts in *Coutee* and *Acosta* are more recent, and the undersigned finds them more persuasive. A case will not be remanded simply because the ALJ did not use the "magic words[,]" but only when there is no indication that the ALJ applied the correct standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 835 (N.D. Tex. 2008) (lower courts have no discretion to conduct harmless-error analysis to determine if remand was proper when the ALJ failed to apply the *Stone* severity standard). The undersigned finds that the ALJ applied the correct legal standard in evaluating Flowers' severe impairments, and remand to the Commissioner is not required in this case.

The ALJ ultimately found that Flowers had severe impairments including a left foot fracture, pelvic ring fracture, right calcaneal fracture, sacral sprain, disorder of coccyx, and L5-S1 foraminal stenosis and proceeded to step three of his analysis. (Tr. 16). Furthermore, because the case did not turn on whether or not Flowers' impairments were severe, but on whether Flowers could perform jobs in the national economy, Flowers' argument on this issue is irrelevant to the ultimate disposition of his case. *See Chaparro v. Bowen*, 815 F.2d 1008 (5th Cir. 1987).

## C. The ALJ Properly Evaluated Credibility.

Flowers' third point of contention is that the ALJ failed to consider other limitations noted by Flowers and ignored certain statements as to Flowers' functional capacity. (Pl.'s Br. at 3). Specifically, Flowers testified that he is disabled due to pain in his low back, ankles, and hips and his limitations of only being able to sit 30 to 45 minutes in an hour, walk 15 to 20 minutes in an hour, and lift two pounds. (Tr. 18). The Commissioner contends that the ALJ considered the totality of the medical evidence and determined that it did not support Flowers' subjective complaints. (Df.'s Br. at 8). The undersigned finds that there is substantial evidence in the record supporting the ALJ's determination and finds that the Commissioner properly weighed all the evidence in making his determination.

In evaluating Flowers' claim, the ALJ considered the evidence and found that though the Flowers' medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (Tr. 18). The ALJ relied on the opinion of Dr. Laurence Ligon, M.D. who opined that Flowers' alleged limitations were not fully supported by the evidence of record. (Tr. 534-541). Pursuant to Social Security Ruling 96-7p, an ALJ assessing a claimant's allegations of symptoms such as pain or fatigue must conduct an objective-subjective,

10

two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008). In the first, objective step, the ALJ must determine whether there is an impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, then the ALJ proceeds to the second, subjective, step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's claims about his symptoms. *Id.*

The ALJ need not "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected[,]" but is required "to explain his reasons for rejecting a claimant's complaints of pain." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Pursuant to SSR 96-7p and 20 C.F.R. § 416.929(c)(3), an ALJ employs a seven-factor analysis to assess the claimant's credibility regarding subjective allegations of pain or fatigue:

> (1) [P]laintiff's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

*Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.929(c)(3)). Although the ALJ must explain his reasons, "neither the regulation nor interpretive case law requires that the ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince*, 418 F. Supp. 2d at 871 (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether

11

the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ in the case at bar properly analyzed Flowers' credibility and ultimately found the expert medical opinions of Drs. Laurence Ligon, Samara Turner, and Delbert McCaig to be more credible on the issue of Flowers' symptoms and limitations. (Tr. 529-541, 564). At the outset of his credibility analysis, the ALJ identified the proper legal standards, stated the parameters of the objective-subjective, two-step analysis he was required to undertake, and proceeded in compliance with the proper legal standards. (Tr. 18). The ALJ determined that Flowers' "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. 18). The ALJ proceeded to step two, at which SSR 96-7p "unambiguously required [him] to evaluate [the] intensity, persistence, and functionally limiting effects of plaintiff's symptoms and to 'make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.'" *Prince*, 418 F. Supp. 2d at 872 (quoting SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996)). The ALJ appropriately considered the seven-factor analysis of SSR 96-7p and found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 18).

In his seven-factor analysis, the ALJ noted Flowers' daily activities as evidenced by a Function Report, which included pet care, personal care without limitation, meal preparation, driving, shopping in stores, paying bills, handling a savings account, using a checkbook, attending church, and attending his children's sporting events. (Tr. 18, 267-277). The ALJ also noted Dr.

Ligon's reported that Flowers could also perform light chores and has no problem with self-care. (Tr. 18).

Next, the ALJ assessed the second factor—location, duration, frequency and intensity of pain or other symptoms—by evaluating Flowers' testimony and the evidence in the record, including the opinions of Drs. Ligon, Turner, and McCaig. (Tr. 529-533, 564). In his analysis, the ALJ highlighted the fact that Dr. McGaig opined that Flowers' actual pain level was 2 on a scale of 1 through 10, though Flowers described his pain as a 3 or 4, and that Flowers continued to smoke against medical advice. (Tr. 529-533). Additionally, while assessing Flowers' pain and symptoms, the ALJ noted that "much of the documentary medical record addresses the period during which the claimant was engaged in substantial gainful activity." (Tr. 19). The ALJ recognized that Flowers was hospitalized on his alleged onset date and was discharged from in-patient rehabilitation on October 6, 2011, but also noted that Flowers was weight-bearing in regular shoe gear with minimal pain by February 28, 2012. (Tr. 19, 451). After stating that Flowers' numbness and swelling had improved by May 30, 2012 the ALJ also emphasized that Flowers' limp was described as moderate on July 11, 2012 and that Flowers was doing very well and that his left foot felt much better on September 10, 2012. (Tr. 19).

The ALJ then considered the fifth factor, noting that Flowers was treated with left ankle arthroscopy on October 5, 2012, but also referenced Flowers' statement that he was doing much better and had more motion in his foot after a physical examination found his ankle to be much improved with no pain or edema. (Tr. 19). The ALJ also noted that Flowers' coccyeectomy scheduled for January 14, 2013 was cancelled due to pain improvement and that on January 29, 2013, Flowers was treated with hardware removal and left ankle arthrodesis. (Tr. 19). On February 4, 2013, Flowers stated that he was doing well and by July 17, 2013, Flowers was noted to have

13

significant relief after an injection to treat his pain related to foraminal narrowing. (Tr. 19). After a post-operative diagnosis of foraminal stenosis at L5-S1, collapse, and posttraumatic changes secondary to an industrial accident on October 8, 2013, Flowers stated that he was doing much better and denied any radicular symptoms to the lower extremities. (Tr. 19-20). The ALJ noted that after an examination on October 23, 2013 Flowers had been walking, observed to sit comfortably, had a balanced gait, and was instructed to wear a brace. (Tr. 20). On November 20, 2013, Flowers reported that he "felt great" and the pain he had prior to surgery was almost completely resolved. (Tr. 20). The ALJ discussed the fact that Flowers stated he was ready to return to work on January 8, 2014 and was released to do so by the Texas Back Institute on January 22, 2014. (Tr. 20).

The undersigned finds that the ALJ weighed all of the evidence to support his decision, and Flowers' claim that the ALJ picked and chose what evidence to consider is not supported by the record. The ALJ is not required to list every piece of evidence, but is instead required to explain his reasons for rejecting a claimant's complaints of pain. *Shave*, 238 F.3d at 595. There is an abundance of evidence to support the ALJ's decision to reject Flowers' claim of pain levels including the opinions of Drs. Ligon and Turner. (Tr. 17). Accordingly, the ALJ properly conducted the credibility analysis required by SSR 96-7p and weighed both the objective and subjective evidence presented by Flowers and contained in the record. The ALJ applied the proper legal standards and did not err in making his credibility determination. *See* 20 C.F.R. § 416.929(c)(3); *Salgado*, 271 F. App'x at 458-59; *see also* SSR 96-7p, 1996 WL 374186, at *3.

## V.     CONCLUSION

The ALJ properly found that Flowers' work between January 13, 2014 and April 11, 2014 was substantial gainful activity, applied the correct legal standard in determining Flowers' severe

14

impairments, and properly evaluated Flowers' credibility. Because the ALJ applied the proper legal standards and substantial evidence in the record supports the ALJ's factual findings, the undersigned RECOMMENDS that Judge O'Connor AFFIRM the Commissioner's decision.

Signed on April 18, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE